UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ALEXANDER,

       Plaintiff,                            Case No. 06-13537

v.                                     District Judge Gerald E. Rosen
                                         Magistrate Judge R. Steven Whalen

CLARENCE POWELL, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion for Summary Judgment [Docket #10], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.

**I. FACTS**

Plaintiff, a prison inmate in the custody of the Michigan Department of Corrections (MDOC), has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging violation of his Eighth Amendment rights as a result of the Defendants' failure to enforce a no-smoking policy. Plaintiff alleges that he suffers from high blood pressure and glaucoma, and that environmental tobacco smoke (ETS) aggravates those conditions.

Plaintiff states that he complained about ETS numerous times between May of 2003

-1-

and August of 2005. *Complaint*, ¶ 11. He specifically complained to Defendants Powell and Gause, both MDOC supervisors. *Id.* ¶ 12. Plaintiff states that on May 3, 2004, the unit in which he was housed at Mound Correctional Facility was designated a non-smoking unit. *Id.* ¶ 17. Nevertheless, he alleges, people continued to smoke, and although he complained, nothing was done about it. *Id.* ¶¶ 18-21.

Plaintiff alleges that on November 1, 2004, when there was excessive smoke in the lower level area of his unit, he asked an Officer Walls who was in charge of enforcing the no-smoking rule, and was told that Defendants Powell and Gause were the people to complaint to. *Id.* ¶ 22. Plaintiff states that he asked to see both Defendants, but they refused to discuss the matter with him. *Id.* ¶ 23. Plaintiff states that several prisoners who were smokers were moved into his unit, in rooms surrounding his. *Id.* ¶ 31.

Plaintiff brings § 1983 claims under the Eighth and Fourteenth Amendments, as well as a state law claim under the Clean Indoor Air Act, M.C.L. 333.12601, *et.seq.*

In moving for summary judgment, Defendants state that smoking is not permitted in any MDOC facility, although inmates may smoke outdoors. However, in "tobacco-free units," inmates are not permitted to purchase or possess any smoking materials.

By affidavit, Defendant Powell states that on May 3, 2004, the lower level of unit 400-A (where Plaintiff was housed) was designated "tobacco-free," and that if a prisoner in that section were caught smoking, he would be ticketed and moved from the unit as soon as space elsewhere became available. *Powell Affidavit*, *Motion, Exhibit 1*, ¶ 5. Powell denies that he refused to speak with Plaintiff on November 1, 2004, but states that he did speak with

Plaintiff on another occasion, explaining to him that "we were doing what we could to resolve the problem." *Id.* ¶¶ 7, 8. He states that Plaintiff never gave him the name of any particular prisoner who was smoking. *Id.*

Appended to Powell's affidavit is a minor misconduct log (Exhibit 1-A) and a chart summarizing smoking tickets and dispositions at Mound Correctional Facility (Exhibit 1-B), between October, 2003 and May, 2005. A total of 46 smoking tickets were issued, and four of those originated in Plaintiff's unit. All four offenders were eventually transferred out of the unit.

In her affidavit, Defendant Gause confirms that the MDOC has a no-smoking policy, and states that there are 8" by 8" no-smoking signs affixed to the wall, adjacent to the entry door of each housing unit. In addition, she says, there are red lines on the sidewalks 20 feet away from each unit, "to remind prisoners, and staff, that no smoking is to occur within 20 feet of the unit." *Gause Affidavit, Motion Exhibit 2*, ¶ 3. Gause states that she enforced the no-smoking rule in Plaintiff's unit, and "[d]isciplinary procedures were followed and documented." *Id*. ¶ 6. She states, "While making regular rounds, I looked for evidence of smoking paraphernalia in the tobacco-free cells. Staff officers also performed routine, random searches of 12 cells per day in Unit 400A" (Plaintiff's unit). *Id.* ¶ 7. Referring to the Minor Misconduct Log, Gause indicates that prisoners assigned to a tobacco-free cell who were found guilty of smoking were placed on a list to be moved out of the unit as soon as bed space elsewhere became available. *Id.* ¶ 8.

Defendant Gause denies that she refused to speak to Plaintiff on November 1, 2004,

adding, "Plaintiff did not sign the callout sheet to see me, thus I was unaware that he wanted to see me." *Id.* ¶ 10.[1]

In his response to the Motion for Summary Judgment, Plaintiff has submitted not only his own affidavit, but affidavits from other inmates in his unit, stating that smoking was prevalent, and there were high levels of ETS.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

---

[1] In his own affidavit in response to the Motion for Summary Judgment, Plaintiff states, at ¶ 12, that on November 1, 2004 there was no sign-up sheet available to see Powell or Gause.

the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.    ANALYSIS

Plaintiff claims a violation of his Eighth and Fourteenth Amendment rights based on exposure to environmental tobacco smoke (ETS).

A viable Eighth Amendment claim has both an objective and subjective component. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir. 1992). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock v. McCrary,*

-5-

273 F.3d 693, 702 (6th Cir. 2002). Under the subjective component, Plaintiff must prove that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 630 (1976). A prison official may be held liable under the Eighth Amendment only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* at 847; *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (reiterating the *Farmer* holding that prison officials must take "reasonable measures" to guarantee the safety of inmates).

With respect to the objective component of an Eighth Amendment ETS claim, Plaintiff must establish either that he has a serious medical problem requiring a smoke free environment, *Hunt,* 974 F.2d at 735-36, or that there exists a markedly high level of exposure of second-hand smoke in the institution that creates an unreasonable risk of serious damage to his future health. *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). *Helling* involved a prisoner who was assigned to a cell with an inmate who smoked five packs of cigarettes per day. *Helling,* at 36. In determining that the prisoner had stated a valid cause of action under the Eighth Amendment, the Court implicitly found that exposure to such a dramatic level of environmental tobacco smoke could be actionable.

The Sixth Circuit has held that mere exposure to ETS does not by itself constitute an Eighth Amendment violation. *Hunt, supra,* at 735. Nonetheless, where prisoners can attribute smoke to their medical conditions, appropriate medical treatment is warranted. *Id.*

In the present case, certain facts are undisputed. The MDOC has a no-smoking policy inside the prisons. Some units, including Plaintiff's, are designated "non-smoking," and thus

the purchase and possession of smoking material is prohibited under the relevant policy directives. However, both the Plaintiff's and the Defendants' affidavits, along with the Minor Misconduct Logs, show that other inmates sometimes violate the policy, and therefore, some level of ETS is present in Plaintiff's unit.

However, the Plaintiff's Eighth Amendment claim falters on two grounds. First, the evidence shows that the Defendants took *reasonable*, albeit imperfect steps to assure that the no-smoking policy was complied with. Secondly, Plaintiff has not shown that ETS caused or seriously aggravated a medical condition, or that the level of ETS was so dramatically high as to support an Eighth Amendment violation without reference to a specific medical condition.

As to the reasonableness of Defendants' actions, the evidence shows that there is, in fact, a no-smoking policy at the MDOC. *See* Policy Directive (PD) 01.03.140. Powell's and Gause's affidavits show that random searches of at least 12 cells were made daily, and that tickets were issued to offending prisoners. The Minor Misconduct Logs support Defendants' claim that the no-smoking policy was enforced, and indeed, four prisoners from Plaintiff's unit who were found guilty of smoking were transferred out.

The issue is not whether Defendants could have enforced PD 01.03.140 more vigorously. The question is whether Plaintiff has demonstrated Defendants' deliberate indifference, a higher standard than mere negligence. Had Defendants Powell and Gause devoted all of their energies to enforcing the no-smoking policy, to the exclusion of other rule or disciplinary infractions, perhaps more prisoners would have received tickets. But

even then, having a prisoner transferred to another unit depended on the availability of space elsewhere, a contingency over which these Defendants had no control.

As a panel of the Sixth Circuit stated in *Wilson v. Hofbauer*, 113 Fed.Appx. 651, 653, 2004 WL 2320337(6th Cir. 2004)(unpublished),[2] "imperfect enforcement of the [no-smoking] policy shows, at most, negligence by the defendants, rather than deliberate indifference." *See also Scott v. District of Columbia*, 139 F.3d 940, 944 (D.C. Cir. 1998); *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005). As *Scott* noted, "deliberate indifference is characterized by 'obduracy and wantonness'" (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). The conduct of Defendants Powell and Gause does not rise to that level.

Nor has Plaintiff produced any objective evidence–as opposed to anecdotal accounts from other prisoners–that the level of ETS was so extraordinarily high as to satisfy the objective prong of *Helling v. McKinney*. *See Scott, supra*, 139 F.3d at 942 ("Missing entirely from the plaintiffs' affirmative case was any objective evidence of the level of second-hand smoke. There was no 'scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that ... injury to health will actually be caused by exposure.' *Helling,* 509 U.S. at 36, 113 S.Ct. at 2482.").

Furthermore, Plaintiff has not offered any evidence, in the form of medical records or otherwise, to show that he has a serious medical condition that was either caused or

---

[2] A copy of *Wilson* is appended to Defendants' motion.

aggravated by ETS. Exposure to ETS does not, by itself, support an Eighth Amendment claim; rather, ETS must be connected to an underlying medical condition. *Hunt v. Reynolds, supra*, 974 F.2d at 735-36. *See Talal v. White, supra* (summary judgment not appropriate where Plaintiff produced medical documentation substantiating an ETS allergy that caused sinus problems and dizziness); *Palacio v. Hofbauer,* 106 Fed. Appx. 1002, 1005, 2004 WL 1987145 (6th Cir.2004) (unpublished) (prisoner who medically substantiated his claim of bronchitis stated a claim under the Eighth Amendment).

Plaintiff has not alleged that his high blood pressure and glaucoma were caused by ETS, and there are no records showing that he was treated at the prison clinic for those conditions, that he is taking medications, or that prison doctors or other medical personnel determined that he required a smoke-free environment.[3] *See Wilcox v. Lewis*, 47 Fed.Appx. 714, 715, 2002 WL 31056017 (6th Cir. 2002)(unpublished)("Although there is no dispute that Wilcox suffers from a serious medical condition, he presented no evidence that ETS had anything to do with that condition").[4]

In view of this record, no reasonable trier of fact could find either the objective or the subjective components of an Eighth Amendment claim. Defendants are therefore entitled to

---

[3]The only evidence in support of the claim that he has a serious medical condition related to smoke is the Plaintiff's own statement that "the smoke caused severe headaches, dizziness and increased my blood pressure." *See* Plaintiff's Affidavit, ¶ 3 (appended to Plaintiff's Reply Brief). There is no clinical corroboration of that claim, other than Plaintiff's self-serving and somewhat ambiguous statement that "a male doctor here at the facility advised me to stay away from the smoke as best I could." *Id.*

[4] A copy of *Wilcox* is appended to Defendants' motion.

summary judgment on the Plaintiff's §1983 claims . *Anderson v. Liberty Lobby, Inc., supra.*

Defendants should also be granted summary judgment on the Plaintiff's state law claim under the Michigan Clean Indoor Air Act. That statute, M.C.L. § 333.12607(a), requires that the state or local governmental agency shall, at a minimum, "[p]ost signs which state that smoking in that public place is prohibited, except in designated smoking areas, pursuant to this part." In addition, the MDOC's policy, contained in PD 01.03.140, states:

> The senior ranking official at each work location shall ensure that a sign is posted at all entrances to Department operated buildings and other buildings, as appropriate, which reads as follows:
>
> > "Smoking is Prohibited in this Building, Executive Order 1992-3."

Defendant Gause states in her affidavit that 8" by 8" "No Smoking" signs are posted at the entrance to all housing units. Plaintiff does not dispute this, but argues that (a) the signs do not explicitly refer to Executive Order 1992-3, and (b) the signs are posted *outside* the units, suggesting that Defendants did not take reasonable measures to ensure that smoking would not take place *inside* the units.

First, the Clean Indoor Air Act does not require explicit reference to the "Executive Order," it only requires the placement of signs indicating that smoking is prohibited. To the extent that Plaintiff is arguing that the omission of reference to the Executive Order is technically non-compliant with the literal reading of the Policy Directive, he has not stated a claim under the statute itself. A violation of a policy directive is not actionable in this

Court. Secondly, there is nothing in the Act that requires posting of a "No Smoking" sign inside a building, as opposed to outside the entrance to a building.

I am not unsympathetic to the Plaintiff's complaints about ETS. Even small or moderate amounts of second-hand smoke are undoubtedly irritating and obnoxious. However, the exposure to smoke must cause more than "mere discomfort or inconvenience." *Hunt v. Reynolds, supra*, 974 F.2d at 735.

### IV. CONCLUSION

I recommend that Defendants' Motion for Summary Judgment [Docket #10 be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages

in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                     S/R. Steven Whalen
                     R. STEVEN WHALEN
                     UNITED STATES MAGISTRATE JUDGE

Dated: January 22, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 22, 2008.

                     S/G. Wilson
                     Judicial Assistant